IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NAVID YEASIN,                          )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          Case No. 2:16-cv-02010-JAR
                                       )
TAMMARA DURHAM,                        )
                                       )
                    Defendant.         )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Defendant, Tammara Durham, has filed a motion to dismiss Plaintiff's Complaint. Plaintiff has alleged that Dr. Durham violated Plaintiff's First Amendment rights by imposing upon him a content-based restriction and then retaliating against him for continuing to exercise his First Amendment rights by expelling him from the University of Kansas and banning him from campus, as well as violating his substantive due process rights by taking action which was arbitrary and without careful consideration. Defendant seeks dismissal on the basis of qualified immunity as well as arguments that Plaintiff has not stated a claim upon which relief can be granted. For the reasons discussed below, Dr. Durham's motion to dismiss must be denied.

## ARGUMENTS AND AUTHORITIES

In support of her motion to dismiss, Dr. Durham raises five separate arguments: (1) with regard to his First Amendment claim, that Plaintiff was not engaged in protected activity because (a) his speech did not touch on matters of public concern and (b) his speech was not protected under the *Tinker* standard; (2) that Title IX required Dr. Durham to take

1

the actions which she took; (3) that the First Amendment allows Dr. Durham to take the action which she took in response to disruption in the educational environment; (4) that First Amendment jurisprudence is complicated and confusing such that Dr. Durham should be protected by qualified immunity; and (5) that Plaintiff's substantive due process claim should be dismissed.  These arguments will be addressed in order.

## I.   Plaintiff was Engaged in Protected Activity

### a.   Plaintiff's Speech Need Not Touch on Matters of Public Concern to be  Protected.

Dr. Durham argues that Plaintiff's tweets are not constitutionally protected because they were of a purely personal nature rather than a matter of public concern.  However, Dr. Durham places undue weight on the question of whether the speech is a matter of public concern.  As noted by the United States Supreme Court, "[t]he guarantees for speech and press are not the preserve of political expression or comment upon public affairs, essential as those are to healthy government."  *Time, Inc. v. Hill*, 385 U.S. 374, 388 (1966).  The Court discussed this further in *United States v. Stevens*, reasoning

> In *Miller* we held that "serious" value shields depictions of sex from regulation as obscenity. Limiting *Miller*'s exception to "serious" value ensured that " '[a] quotation from Voltaire in the flyleaf of a book [would] not constitutionally redeem an otherwise obscene publication.'" We did not, however, determine that serious value could be used as a general precondition to protecting *other* types of speech in the first place. *Most* of what we say to one another lacks "religious, political, scientific, educational, journalistic, historical, or artistic value" (let alone serious value), but it is still sheltered from government regulation. Even " '[w]holly neutral futilities... come under the protection of free speech as fully as do Keats' poems or Donne's sermons.'

559 U.S. 460, 479-80, 130 S. Ct. 1577, 1591, 176 L. Ed. 2d 435 (2010) (italics in original, underlines added)(internal citations omitted).

In 2011, the Supreme Court addressed the protections of speech of both public and private concern.  In *Snyder v. Phelps*, the Court noted that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection. 131 S.Ct. 1207, 1215, citing *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684 (1983).  The Court went on, "not all speech is of equal First Amendment importance, however, and where matters of purely private significance are at issue, First Amendment protections are often <u>less rigorous</u>."  Id., citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (emphasis added).  Of importance is the Court's choice of words - that matters of private concern may be provided less rigorous protection, not that such speech is provided no protection at all.

Indeed, the Supreme Court has made clear in recent years that the First Amendment protects a wide range of speech that has little or no relationship to or value in the realm of public affairs.  See, e.g. *Stevens*, 130 S.Ct. 1577 (2010)(protecting depictions of animal cruelty); *Brown v. Entertainment Merch. Ass'n*, 131 S.Ct. 2729 (2011)(applying First Amendment protection to video games: "The Free Speech Clause exists principally to protect discourse on public matters, but we have long recognized that it is difficult to distinguish politics from entertainment, and dangerous to try."); *United States v. Alvarez*, 132 S.Ct. 2537 (2012)(involving false assertions of personal military involvement and valor).

As noted above, whether speech lacks value, public or otherwise, is not a determinative factor in whether that speech is protected.  Further, Dr. Durham is applying an incorrect standard.  Specifically, with two exceptions, Dr. Durham cites entirely to cases involving First Amendment retaliation cases brought by public employees.  First Amendment violations in the context of public employment are evaluated using a different, and specific, standard – often called "Garcetti/Pickering" analysis.  In public employment cases, the employee's First Amendment rights are limited in an effort to balance the rights of the employee against the interests of the employer.[1]  For that reason, when a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom[2] and a government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations. *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951 (2006). This is not a public employment case.

The two cases cited by Defendant which are not public employment cases – *Richard v. Perkins* and *Marcum v. Dahl* – both involve statements by college students but are easily distinguishable from the instant case.  First, the internal citations within those cases rely on

---

[1] The problem in any case. . . is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006) citing  *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

[2] "The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006), citing  *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968),

analysis from public employment cases for the underlying assertion that speech must touch on a matter of public concern to be protected.  As noted above, this is the incorrect standard. Second, each of those cases involve speech made to the University or its representatives, in the context of an internal grievance procedure, protesting action taken against the particular students by the University or its agents.  Certainly, if Plaintiff's contention was that his protected speech was his appeal to the University Judicial Board, these cases would be more on point. But that is not the case.  Here, Plaintiff's speech was outside the University, in a medium designed for Plaintiff to communicate with his friends and Twitter followers, off-campus, about matters which had no relation to the business of the University.  This is an important distinction because while the court has found that these kinds of internal, personal grievance related communications may not be protected, that is not the speech that is at issue in this matter.

And perhaps more importantly, this distinction is important because this case is not about speech made in the context of a personal, internal grievance, it is about the Defendant imposing a content-based restriction on Plaintiff's speech and then retaliating against him when he continued to exercise his First Amendment right in the face of the University's constitutionally invalid restriction.

> **b.     The restriction placed on Plaintiff was content-based, subject to strict scrutiny.**

In addition to the no-contact order issued by the University, the University "clarified" its order advising Plaintiff that "any reference made on social media regarding Ms. [W], even if the communication is not sent to her or state [sic] her by name specifically,

is a violation of the No Contact Order."  Defendant's summary of the basis for her decision to expel Plaintiff further makes it clear that Plaintiff's tweets *about* A.W. played a crucial role in the decision to expel Plaintiff from the University.   Because it limited the permissible subject matter of Plaintiff's Twitter posts, the restriction placed on Plaintiff – and which subsequently formed the basis for his expulsion – was a content-based restriction of his speech.

"[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  As a result, the Constitution "demands that content-based restrictions on speech be presumed invalid ... and that the Government bear the burden of showing their constitutionality." *United States v. Alvarez*, 132 S. Ct. 2537, 2543-44, 183 L. Ed. 2d 574 (2012), citing *Ashcroft v. American Civil Liberties Union,* 542 U.S. 656, 660, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004) (other internal citations omitted).

The Supreme Court has been clear in its disapproval of content-based restrictions, reasoning that "content based prohibitions . . . have the constant potential to be a repressive force in the lives and thoughts of a free people.  To guard against that threat the Constitution demands that content-based restrictions on speech be presumed invalid and that the Government bear the burden of showing their constitutionality."  *Ashcraft v. Am. Civil Liberties Union*, 542 U.S. 656, 670 (2004) (citations omitted).  Accordingly, "[c]ontent based restrictions on speech have been permitted, as a general matter, only when confined to the few 'historic and traditional categories [of expression] long familiar to the bar.'" Alvarez, 132 S.Ct. at 2544 (citation omitted)(listing obscenity, defamation, fighting words,

child pornography, true threats, etc.).   Content-based restrictions are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015).

As discussed in more detail below, there is no dispute that Defendant was obligated to take some action under Title IX.  However, there remain questions of fact with regard to what, if any, impact Plaintiff's speech had on A.W. or her educational environment. Further it is the burden of the Defendant to prove that the restriction placed on Plaintiff was narrowly tailored to serve a compelling interest.  Accordingly, the Motion to Dismiss should be denied.

### c.   The *Tinker* Standard Does Not Apply.

Defendant argues that under *Tinker v. Des Moines Independent Community School District* and its progeny that school officials may prohibit student expression if it would materially and substantially interfere with the work and discipline of the school, create a substantial disruption of school activities, intrude upon the rights of other students, or interfere with the right of others to be secure and let alone.  Doc #13 at 13-14. However, Plaintiff's First Amendment claim should not be analyzed under the *Tinker* standard as *Tinker* concerned K-12 public education, not a university setting.  The United States Supreme Court has already rejected the notion that the same restrictive standard applies to colleges and universities:

> And, where state-operated educational institutions are involved, this Court has long recognized 'the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional

safeguards, to prescribe and control conduct in the schools.   <u>Yet, the precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large.</u>"

*Healy v. James*, 408 U.S. 169, 180, 92 S.Ct. 2338 (1972) (emphasis added) (internal citations to *Tinker* omitted).

Defendant cites to *Morse v. Frederick* and *Bell v. Itawamba Cty. Sch. Bd.* to highlight the "confusing standards the Court asks administrators to apply."  Doc. #13 at 16.  However, this confusion can easily be addressed by noting that both *Morse* and *Bell* both involve the application of the evolving *Tinker* standard to K-12 public education and the Supreme Court has already rejected the use of this standard to college and university settings.

## II.    TITLE IX Does Not Permit or Require Violation of the First Amendment.

The University continues to hide behind its obligations under Title IX, insinuating that these requirements somehow supersede the protections offered by the First Amendment.  Dr. Durham points to an April 4, 2011 "Dear Colleague" letter from the Office for Civil Rights which requires universities to investigate all complaints of harassment.  This "Dear Colleague" letter is largely procedural in nature and addresses the obligations of a public school or university in investigating sexual harassment or sexual violence.  Plaintiff does not dispute that the University has certain obligations under Title IX to investigate suspected or reported sexual discrimination and to take appropriate action in response.

However, Dr. Durham fails to note that another, earlier "Dear Colleague" letter from the Office for Civil Rights dated July 28, 2003, specifically instructs that "OCR's regulations should not be interpreted in ways that would lead to the suppression of protected speech on public of private campuses." The letter goes on:

> <u>I want to assure you in the clearest possible terms that OCR's regulations are not intended to restrict the exercise of any expressive activities protected under the U.S. Constitution.</u> OCR has consistently maintained that the statutes that it enforces are intended to protect students from invidious discrimination, <u>not to regulate the content of speech</u>. … OCR has consistently maintained that schools in regulating the conduct of students and faculty to prevent or address discrimination must formulate, interpret, and apply their rules in a matter that respects the legal rights of students and faculty, including those court precedents interpreting the concept of free speech. OCR's regulations and policies do not require or proscribe speech, conduct or harassment codes that impair the exercise of rights protected under the First Amendment.

OCR Dear Colleague Letter, July 28, 2003[3] (emphasis added). The letter also provides, "[n]o OCR regulation should be interpreted to impinge upon rights protected under the First Amendment to the U.S. Constitution or to require recipients to enact or enforce codes that punish the exercise of such rights." Id.

OCR affirmed the guidance offered in the 2003 Dear Colleague Letter in August 2014 in a statement titled "Questions and Answers on Title IX and Sexual Violence." Specifically, OCR explained

> Title IX protects students from sex discrimination; <u>it does not regulate the content of speech</u>. OCR recognizes that the offensiveness of a particular expression as perceived by some students, standing alone, is not a legally sufficient basis to establish a hostile environment under

---

[3] Available at http://www2.ed.gov/about/offices/list/ocr/firstamend.html

> Title IX. Title IX also does not require, prohibit, or abridge the use of particular textbooks or curricular materials.

Office for Civil Rights, Questions and Answers on Title IX and Sexual Violence (Aug. 29, 2014)[4] (emphasis added).

## III.    The *Tinker* "Substantial Disruption" Standard Does Not Apply.

Dr. Durham again relies on *Tinker* and its progeny for the proposition that she may circumvent the First Amendment if there is evidence of disruption to a student's education. As discussed above, the Supreme Court has clearly rejected the application of *Tinker* to the college or university setting.  "Concerns over a captive, highly impressionable audience are inapplicable in the adult world of a college campus at which attendance is non-compulsory.  'College students today are no longer minors; they are now regarded as adults in almost every phase of community life. . . .'"  Brief for Foundation for Individual Rights in Education, Inc. and Student Press Law Center as Amici Curiae Supporting Appellee/Cross Appellant, *Yeasin v. The University of Kansas*, No. 15-113098-A, citing *Nero v. Kansas State Univ.*, 861 P.2d 768, 774, 778 (Kan. 1998) (rejecting the *in loco parentis* doctrine as "outmoded" in a college environment).

Even if the *Tinker* Substantial Disruption standard did apply to this case, there remain questions regarding how A.W. discovered the "tweets" as she was not an approved follower of Plaintiff[5]; what, if any, disruption was caused to A.W.'s education; and if any

---

[4] Available at http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.
[5] See, *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 869, 117 S. Ct. 2329, 2343, 138 L. Ed. 2d 874 (1997) (the Internet is not as "invasive" as radio or television. . .[c]ommunications over the Internet do not 'invade' an individual's home or appear on one's computer screen unbidden. Users seldom encounter content 'by accident.").

such disruption rose to the level of being "substantial" to justify Defendant's action. Accordingly, a Motion to Dismiss is not appropriate and should be denied.

## IV.   Dr. Durham is not Protected by Qualified Immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010), citing *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test." *Id.*, citing *McBeth v. Himes,* 598 F.3d 708, 716 (10th Cir.2010). "The plaintiff must establish '(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct....' " *Id.*

To "nudge [his] claims across the line from conceivable to plausible," *Twombly,* 127 S.Ct. at 1974, in this context, plaintiff must allege facts sufficient to show (assuming they are true) that the defendant plausibly violated [his] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made.  This does not mean that complaints in cases subject to qualified immunity defenses must include "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)*, citing Breidenbach v. Bolish,* 126 F.3d 1288, 1293 (10th Cir.1997).

### a.   Plaintiff has Plead Sufficient Facts of a Violation of his First and Fourteenth Amendment Rights.

Plaintiff has plead sufficient facts under the *Twombly* standard to put the Defendant on notice of the claims against her.   Specifically, with regard to Plaintiff's First Amendment claim, Plaintiff has pled that he exercised his First Amendment rights in posting on Twitter (Doc. #1-1, ¶ 26); that his exercise of his right of free speech was a substantial or motivating factor in the decision of Defendant to expel Plaintiff (Doc. #1-1, ¶ 28); that Defendant knew, or reasonably should have known that the imposition of content-based restrictions and subsequent expulsion of Plaintiff for said speech would violate his First Amendment rights (Doc. #1-1, ¶ 29) and as a result of "Defendant's retaliatory expulsion of Plaintiff from KU, Plaintiff has sustained damages in the form of delay in completing his education, financial loss, emotional distress and mental anguish and attorney fees and costs" (Doc. #1-1, ¶ 30).   Plaintiff's plead facts clearly identify the act which is constitutionally protected – posting on Twitter – and the alleged violation of Plaintiff's First Amendment right by Defendant – imposition of content-based restrictions and subsequent expulsion of Plaintiff.

### b.   Plaintiff's First Amendment Right was Clearly Established.

First Amendment rights of university students are clearly established by United States Supreme Court precedents.   See, *Widmar v. Vincent*, 454 U.S. 263, 268-69, 102 S. Ct. 269, 274, 70 L. Ed. 2d 440 (1981) ("our cases leave no doubt that the First Amendment rights of speech and association extend to the campuses of state universities."); *Healy v. James*, 408 U.S. 169 (1972); *Papish v. Board of Curators of the University of Missouri*,

410 U.S. 667 (1973)("state colleges and universities are not enclaves immune from the sweep of the First Amendment"); *Shelton v. Tucker*, 364 U.S. 479 (1960).

It is equally well established that content-based restrictions are disfavored and presumptively invalid under the law.  See, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests"); *Ashcraft v. Am. Civil Liberties Union*, 542 U.S. 656, 670 (2004); *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828, 115 S. Ct. 2510, 2516, 132 L. Ed. 2d 700 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382, 112 S. Ct. 2538, 2542, 120 L. Ed. 2d 305 (1992) ("Content-based regulations are presumptively invalid.").

Finally, the fact that the speech in this case occurred on a relatively new medium – Twitter – also does not excuse the constitutional violation.  The Supreme Court has long held that

> whatever the challenges of applying the Constitution to ever-advancing technology, "the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary" when a new and different medium for communication appears.

*Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733, 180 L. Ed. 2d 708 (2011), citing *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 503, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). See, also, *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870, 117 S. Ct. 2329, 2344,

138 L. Ed. 2d 874 (1997) ("our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to [the Internet]").

## V.   Plaintiff's Substantive Due Process Claim Should Not Be Dismissed

In regard to dismissal of Plaintiff's substantive due process claim, Dr. Durham only contends that the "petition fails to state a violation of federal rights, and Dr. Durham is entitled to qualified immunity." (Doc. #13 at 24). As discussed above (p. 11), once a qualified immunity defense is raised, a plaintiff must establish (1) that the defendant violated a constitutional or statutory right; and (2) that this right was clearly established at the time of the defendant's conduct.

### a.   Plaintiff Has Plead Sufficient Facts of A Violation of His Constitutional Right to Due Process

Dr. Durham's analysis of the qualified immunity issue is premised on the assumption that "Plaintiff does not allege a fundamental right to maintain his enrollment or to a college education." (Doc. #13 at 24). This assumption is erroneous. The petition expressly alleges the following:

> 34.    Under Kansas and Tenth Circuit law, Plaintiff had a protected property interest in his continued enrollment at KU.

> 35.    Defendant's actions in expelling Plaintiff and banning him from University property were arbitrary and lacking in a rational basis, denying Plaintiff his right to substantive due process.

(Doc. #1-1, ¶¶ 34-35).

The Tenth Circuit has specifically recognized that continued enrollment in an educational program at a public university constitutes a property interest which is protected

by substantive due process, and thus is a fundamental right.  The Tenth Circuit first recognized the protected status of a student's right to continued enrollment in an educational program at a public university in 1986 in the case of *Harris v. Blake*, 798 F.2d 419 (10th Cir. 1986).

The plaintiff in *Harris* had been enrolled as a graduate student in psychology at the University of Northern Colorado.  He alleged "that his rights to procedural and substantive due process were violated when he was required to withdraw from a program of graduate study."  798 F.2d at 420.  More specifically, he alleged "that he was deprived of a property interest in continued enrollment and a liberty interest in his ability to pursue a career in psychology."  798 F.2d at 422.  In addressing the plaintiff's procedural due process claim, the Tenth Circuit first held that he had a protected property interest in his continued enrollment in the psychology program, explaining:

> In *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975), we held that an individual's place in a post-secondary nursing program constitutes a protected property interest.  We relied in part upon *Goss v. Lopez*, 419 U.S. 565 (1975), which recognized a property interest in public education. . . . Colorado has created the basis for a similar claim of entitlement to an education in its state college system, which includes the University of Northern Colorado.

798 F.2d at 422.

In addressing the plaintiff's substantive due process claim, the Tenth Circuit in *Harris* again noted that he had a protected property interest in his continued enrollment in the psychology program, stating:

> The Due Process Clause not only provides a procedural safeguard against deprivations of life, liberty, and property but

also protects substantive aspects of those interests from unconstitutional restrictions by government.   [Citations omitted.]   We have already held that Harris had a property interest in his post-graduate education.   He contends further that <u>defendant's actions which resulted in his dismissal from the program were so arbitrary that they denied him substantive due process</u>.

798 F.2d at 424.  Emphasis added.

The Tenth Circuit then applied the analysis set forth by the Supreme Court in

*Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985), saying:

As in *Ewing*, the essence of Harris' claim is that defendants misjudged his fitness to remain a student.  We must therefore review the record to determine whether the evidence, viewed most favorably to Harris, unmistakably demonstrates that defendant's decision was 'made conscientiously and with careful deliberation,' or whether the record shows '<u>such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment</u>.'

798 F.2d at 424-25.  Emphasis added.

The Tenth Circuit followed its decision in *Harris* fifteen years later in *Gossett v.*

*Oklahoma ex rel. Bd. Of Regents for Langston University*, 245 F.3d 1172 (2001).  The

plaintiff in *Gossett* had been enrolled as an undergraduate student in the nursing program

at Langston University.  He alleged "that his involuntary withdrawal from the University's

nursing program was caused by gender discrimination that violated his right to equal

protection, substantive and procedural due process, and Title IX."  245 F.3d at 1175.  In

analyzing the plaintiff's substantive and procedural due process claims, the Tenth Circuit

stated:

> As an initial matter, we note that Mr. Gossett had a property interest in his place in the Nursing School program that is entitled to due process protection under the Constitution. See *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986).

245 F.3d at 1181.

In specifically addressing Mr. Gossett's substantive due process claim, the Tenth Circuit again followed its prior decision in *Harris* and the Supreme Court's decision in *Ewing*, concluding:

> Under Supreme Court authority, <u>a plaintiff asserting a substantive due process claim based on an academic decision must show that the decision was the product of arbitrary state action</u> rather than a conscientious, careful and deliberate exercise of professional judgment. See *Ewing*, 474 U.S. at 224-25. . .; *Harris*, 798 F.2d at 424. A plaintiff may make such a showing by evidence that the challenged decision was based on 'nonacademic or constitutionally impermissible reasons,' rather than the product of conscientious and careful deliberation. *Ewing*, 474 U.S. at 225 . . .; *Harris*, 798 F.2d at 424. Mr. Gossett presented evidence sufficient to create a fact issue on whether the decision to require his withdrawal from the nursing program was motivated by impermissible gender discrimination rather than based on an exercise of professional judgment as to his academic ability.

245 F.3d at 1182. Emphasis added.

Here, as in *Blake* and *Gossett* (both following *Ewing*), Plaintiff alleges that he was wrongfully deprived of his property interest in his continued enrollment in an educational program at KU because Dr. Durham's actions "were arbitrary and lacking in a rational basis." (Doc. #1-1, ¶ 35). This allegation, if proven, is sufficient to establish a violation of Plaintiff's constitutional right to substantive due process. In the words of the Tenth Circuit in *Gossett*, "a plaintiff asserting a substantive due process claim based on an

17

academic decision must show that the decision was the product of arbitrary state action rather than a conscientious, careful and deliberate exercise of professional judgment." 245 F.3d at 1182. This is precisely what the plaintiff alleges here.

**b.     Plaintiff's Right to Substantive Due Process Was Clearly Established**

As the above discussion of the Tenth Circuit's decisions in *Harris* and *Gossett* demonstrates, Plaintiff's right to substantive due process was clearly established in 2013, when Dr. Durham expelled him from continued enrollment in an educational program at KU. The Tenth Circuit decided *Harris* in 1986 and *Gossett* in 2001. Consequently, Dr. Durham's alleged arbitrary conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dodds*, 614 F.3d at 1191. This in turn means that, at this stage of the litigation, Dr. Durham is not entitled to qualified immunity as to Plaintiff's substantive due process claim.

## <u>CONCLUSION</u>

For the reasons discussed above, Dr. Durham's motion to dismiss must be denied.

Respectfully submitted:

SLOAN, EISENBARTH, GLASSMAN,
     MCENTIRE & JARBOE, L.L.C.
534 S. Kansas Ave., Ste 1000
Topeka, KS 66603-3456
Office:       (785) 357-6311
Fax:   (785) 357-0152


BY  /s/Danielle N. Davey
    Danielle N. Davey, #24205
    ddavey@sloanlawfirm.com
    Alan V. Johnson, #9992
    ajohnson@sloanlawfirm.com
    **ATTORNEYS FOR PLAINTIFF**

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following parties:

Michael C. Leitch
University of Kansas
Office of the General Counsel
Room 245 Strong Hall
1450 Jayhawk Blvd
Lawrence, KS 66045
mleitch@ku.edu

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: NONE

 s/Danielle N. Davey
Alan V. Johnson, KS #9992
Danielle N. Davey, KS #24205