IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**NAVID YEASIN,**

    **Plaintiff,**

    v.

**TAMMARA DURHAM,**

    **Defendant.**

Case No. 2:16-CV-02010-JAR

## MEMORANDUM AND ORDER

Plaintiff Navid Yeasin filed this action under 42 U.S.C. § 1983 alleging that Defendant Tammara Durham, the University of Kansas's Vice Provost for Student Affairs, retaliated against him in violation of his First Amendment rights and violated his substantive due process rights under the Fourteenth Amendment. This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 13). The motion to dismiss is fully briefed, and the Court is prepared to rule. For reasons explained more fully below, Defendant's motion to dismiss is granted.

**I.**    **Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[1] To state a claim for relief under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2] The plausibility standard does not require a showing of probability that a defendant has acted

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

unlawfully, but requires more than "a sheer possibility."[3] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

If the Court on a Rule 12(b)(6) motion looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[10] However, the court may consider documents

---

[3]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[5]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6]*Id.*

[7]*Id.* at 679

[8]*Id.*

[9]*Id.* at 678.

[10]Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

which are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[11]

Defendant attached a number of exhibits to her motion to dismiss. The Tenth Circuit has stated it is within the discretion of the district court whether to consider such materials.[12] The Court considers some but not all of the exhibits without converting the motion to a Rule 56 motion for summary judgment. First, the Court considers the August 14, 2013 letter from KU's Office of Institutional Opportunity and Access ("IOA") (Doc. 13-4) because it was quoted in the Complaint.[13] Second, the Court considers the September 6, 2013 email from IOA (Doc. 13-5) because it was also referred to for its content in the Complaint.[14] Third, the Court considers Article 20 of the Student Code of Conduct (Doc. 13-8) because both the state district court and court of appeals made findings on the jurisdiction of the Student Code of Conduct based on Article 20.[15] Fourth, the Court considers the content of the sanction letter from Defendant to Plaintiff on November 13, 2016 (Doc. 13-7). Courts have considered documents referred to in the complaint and attached to the motion to dismiss where they are central to plaintiff's claims and neither party dispute the authenticity.[16] Plaintiff refers to this letter in paragraph 15 of the complaint.[17] This letter constitutes Defendant's decision to expel Plaintiff and ban him from

---

[11] *See Alvardo v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002); *GFF Corp.*, 130 F.3d at 1384–85.

[12] *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999).

[13] Doc. 1 at ¶ 9.

[14] *Id.* at ¶ 12.

[15] *Id.* at ¶¶ 20, 22.

[16] *VanLandingham v. Grand Junction Reg'l Airport Auth.*, 603 F. App'x 657, 662 (10th Cir. 2015) (considering a release and agreement attached to the motion to dismiss); *Alvarado*, 293 F.3d 1210 (considering a court order sealing the identity of plaintiff in an invasion of privacy claim because it was "central" to the claims against the parties); *Jacobsen*, 287 F.3d at 941–42; *Butler v. Rio Rancho Public Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) (considering the decisions of the hearing officer and school board in the case of a student expelled from school alleging substantive due process violations).

[17] Doc. 1 at ¶ 15.

KU—the very decision Plaintiff challenges in this case. It is central to Plaintiff's First Amendment and substantive due process claims. Plaintiff's Complaint also referenced the letter for its content. Plaintiff did not dispute the authenticity of these documents in his response nor does he object to the Court considering them. The Court did not consider Docs. 13-1, 13-2, 13-3, and 13-6.

The Court may also take judicial notice of certain facts without converting a motion to dismiss into one for summary judgment.[18] Under Fed. R. Evid. 201, the Court may take judicial notice at any time of the proceeding of a fact "that is not subject to reasonable dispute because it[] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[19] Judicially noticed documents "may only be considered to show their contents, not to prove the truth of matters asserted therein."[20] Judicial notice is mandatory when requested by a party and the Court is provided the necessary information.[21] Defendant has requested that the Court take judicial notice of the Kansas Court of Appeals' decision in *Yeasin v. University of Kansas*.[22] The Court will take judicial notice of the ruling in the Kansas Court of Appeals.[23]

---

[18]*See, e.g.*, *Tal v. Hogan*, 453 1244, 1265 n.24 (10th Cir. 2006); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

[19]Fed. R. Evid. 201(b)(2).

[20]*Tal*, 453 F.3d at 1264 n.24 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

[21]Fed. R. Evid. 201(c).

[22]360 P.3d 423 (Kan. Ct. App. 2015).

[23]*See Wagner v. Michie*, 543 F. App'x 753, 754 (10th Cir. 2013) (taking judicial notice of three state court decisions related to the matter before the court); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (concluding that the court can "take judicial notice of all the materials in the state court's file"); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

**II.     Background**

Drawing all reasonable inferences in favor of Plaintiff, the following facts are taken from Plaintiff's Complaint ("Complaint").[24] As discussed above, the Court also considers Doc. 13-4, 13-5, 13-7, 13-8 attached to Defendant's motion to dismiss because the documents are referenced in the Complaint and are central to Plaintiff's claims.

Plaintiff Navid Yeasin was a student at the University of Kansas ("KU"). While he was a student, he was involved in a romantic relationship with another KU student, A.W. The relationship began in the fall of 2012 and ended in the summer of 2013. On June 28, 2013, an incident occurred between Plaintiff and A.W. in Johnson County, Kansas that resulted in the termination of their relationship, filing of a criminal case against Plaintiff, and a consent protection order in Johnson County, Kansas. The consent protection order prohibited Plaintiff from having any contact, directly or indirectly, with A.W.

In August 2013, when A.W. and Plaintiff returned to the KU campus for the fall semester, A.W. made a complaint to IOA that Plaintiff had sexually harassed her. On August 14, 2013, IOA sent Plaintiff a letter ("No Contact Letter") prohibiting Plaintiff from "attempt[ing] to contact [A.W.], personally or through any other person."[25]

Both during the relationship and after the relationship, Plaintiff maintained a social media account on Twitter. When the relationship ended, Plaintiff removed A.W. from his list of approved followers who could view or retweet his tweets. Over a period of approximately four months, Plaintiff tweeted approximately fourteen tweets that referenced but did not name A.W., nor was A.W.'s Twitter handle or other identifiers included in the tweets.

---

[24]Doc. 1.
[25]Doc. 13-4.

5

During the first week of September 2013, A.W. complained to IOA that her friends had shown her tweets from Plaintiff to his followers subsequent to IOA's No Contact Letter. On September 6, 2013, IOA sent Plaintiff an email indicating that it interpreted the No Contact Letter to prohibit comments on any social media account about A.W "even if the communication is not sent to her or [does not] state her name specifically."[26] It warned that any further violation may result in expulsion.

On October, 7, 2013, IOA determined that Plaintiff had sexually harassed A.W. in the incident that occurred on June 28, 2013 in Johnson County and subsequently by sending tweets that referenced A.W. On October 18, 2013, IOA notified Plaintiff that he had violated Article 22 of the Student Code of Conduct and scheduled a formal hearing. Article 22 of the Student Code of Conduct at the time provided:

> Students and organizations are expected to conduct themselves as responsible members of the University community. While on University premises or at University sponsored or supervised events, students and organizations are subject to disciplinary action for violations of published policies, rules, and regulations of the University and Regents, and for the following offenses . . . .[27]

Additionally, Article 20 of the Student Code of Conduct provided jurisdiction when "the alleged violation(s) giving rise to the disciplinary action occurs on University premises or at University sponsored or supervised events, or as otherwise required by federal, state or local law."[28]

After the formal hearing, on November 13, 2013, Defendant found that Plaintiff had committed non-academic misconduct based on the June 2013 incident, the threatening statements made to A.W., the tweets, and violation of the No Contact Letter.[29] Defendant noted also in her

---

[26]Doc. 13-5.

[27]Doc. 13-8 at 10.

[28]*Id.* at 9.

[29]Doc. 13-7 at 2–3.

6

findings that A.W. was fearful for her safety on campus and wanted to stay inside her sorority house.[30]  Defendant found that the conduct at issue was so "severe, pervasive, and objectively offensive" that it interfered with A.W.'s education.[31]  Defendant expelled Plaintiff from KU, and banned him from being on KU property.  None of the conduct that Defendant based her decision on occurred on campus or at a University sponsored event.  Following his expulsion, Plaintiff timely appealed to the University Judicial Board, which summarily dismissed the appeal.

     Following the dismissal of Plaintiff's appeal to the University Judicial Board, Plaintiff filed a Petition for Judicial Review in the District Court of Douglas County, Kansas pursuant to the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions ("KJRA").[32]  On September 26, 2014, Douglas County District Court Judge Robert Fairchild entered a Memorandum Decision ruling that the findings of the hearing panel, which were subsequently adopted by Defendant and the University Judicial Board, were not supported by substantial evidence, and that KU through Defendant erroneously interpreted the Student Code of Conduct by applying it to off-campus conduct.  Judge Fairchild ordered that Plaintiff's expulsion be set aside.  Judge Fairchild did not reach the question of whether KU's actions violated Plaintiff's rights under the First Amendment of the United States Constitution.

     Despite Judge Fairchild's ruling, KU requested a stay while the matter was appealed to the Kansas Court of Appeals.  Plaintiff was not permitted to re-enroll at that time.  On September 25, 2015, the Kansas Court of Appeals affirmed the ruling of the District Court, finding that KU through Defendant erroneously interpreted the Student Code of Conduct by applying it to off-

---

[30]*Id.* at 3.

[31]*Id.*

[32]K.S.A §§ 77-601–631.

campus conduct and lifted the stay.[33]  The Kansas Court of Appeals did not reach the question of whether KU's actions violated Plaintiff's rights under the First Amendment of the United States Constitution.

As a result of KU's expulsion of Plaintiff, he has suffered damages in the form of delay in completing his education, lost employment and wages, emotional distress and mental anguish, attorney fees and litigation costs.

## III.     Discussion

Defendant argues for dismissal of both the First Amendment and Fourteenth Amendment substantive due process claims based on qualified immunity.  Defendant argues that her actions did not violate Plaintiff's First Amendment and substantive due process rights, and alternatively, even if there was a violation of those rights, they were not clearly established such that every official in Defendant's position would have understood they were violating federal law.  Plaintiff argues he has plead sufficient facts of a violation of his First and Fourteenth Amendment rights, and such rights were clearly established at the time of the violation.

Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.[34]  To this end, qualified immunity shields government officials from liability unless the plaintiff shows (1) the defendant's violation of a constitutional right; and (2) that the right the official violated was "clearly established" at the time of the challenged conduct.[35]  Accordingly, the qualified immunity defense must be resolved "at the earliest possible stage of litigation."[36]  For the Court to resolve the issue of qualified

---

[33]*Yeasin v. Univ. of Kansas*, 360 P.3d 423 (Kan. Ct. App. 2015).

[34]*Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[35]*Id.* at 735.

[36]*Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

8

immunity at the earliest possible stage of litigation, the complaint must allege enough facts to make clear the grounds on which the claim rests.[37]

### 1.     First Amendment

This Court begins by addressing whether, assuming Plaintiff had a First Amendment right to post on Twitter that was violated by Defendant expelling him from KU, this right was clearly established at the time. Courts have discretion to decide the order in which to engage in the two-prong qualified immunity analysis.[38] The Court exercises its discretion to address only the clearly established prong of the standard as to the First Amendment claim. As will be discussed more fully below, this Court finds dispositive the absence of controlling authority that specifically prohibits Defendant's conduct.

A government official violates clearly established law when the contours of a right at the time of the challenged conduct are sufficiently clear so that a "reasonable official would understand that what he is doing violates that right."[39] A plaintiff may establish this prong "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"[40] When the clearly established requirement is "properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"[41] "[T]he Supreme Court has 'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair

---

[37]*Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 n.3 (2007)).

[38]*Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[39]*Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013) (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

[40]*Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)).

[41]*Robbins*, 519 F.3d at 2085 (quoting *Mailey v. Briggs*, 475 U.S. 335, 341 (1985)).

notice that the described conduct was unconstitutional.'"[42]  Most recently, the Supreme Court, in *Mullenix v. Luna*, explained that "[t]he dispositive question 'is whether the violative nature of *particular* conduct is clearly established.'  This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"[43]  It must have been clear to a reasonable person in Defendant's position "that [her] conduct was unlawful in the situation [she] confronted."[44]

Because neither the Supreme Court nor a panel of the Tenth Circuit has considered whether universities can regulate off-campus, online speech by students, Plaintiff relies on the argument that KU's No Contact Letter placed a content-based, subject matter restriction on his speech that must be subjected to strict scrutiny.  Plaintiff also argues that the standard for analyzing student speech announced in *Tinker v. Des Moines Independent Community School*[45] is inapplicable to the university setting, and therefore, to this case.  Because First Amendment rights of university students are generally recognized,[46] Plaintiff concludes that he exercised his First Amendment rights by posting on Twitter, and that Defendant knew or reasonably should have known that imposition of the No Contact Letter was an unconstitutional content-based restriction on his speech.

---

[42]*Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

[43]*Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742 (emphasis added); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

[44]*Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[45]393 U.S. 503, 514 (1969) (concluding schools may restrict speech that might "reasonably lead school authorities to forecast substantial disruption of or material interference with school activities or that collides with the rights of other students to be secure and to be let alone").

[46]*See Widmar v. Vincent*, 454 U.S. 263, 268–69 (1981); *Papish v. Bd. of Curators of the Univ. of Missouri*, 410 U.S. 667 (1973) ("State colleges and universities are not enclaves immune from the sweep of the First Amendment.").

The Court observes that Plaintiff's argument that this was a content-based, subject matter restriction that must be analyzed under strict scrutiny ignores the context in which this occurred. Plaintiff cites case law disapproving of content-based restrictions.[47]  However, none of these cases are in the college or university context.  The Supreme Court has expressly recognized that "a college has a legitimate interest in preventing disruption on the campus."[48]  Also, contrary to Plaintiff's position, several circuit courts, including the Tenth Circuit, have also found that the less rigorous student-speech standards apply to college students.[49]  The law in this area is constantly developing, and when Plaintiff was expelled in 2013, it was even more unclear what standards applied.  This case can hardly be categorized as a clear case of a content-based restriction in violation of the First Amendment.

Most importantly, circuit courts have come to conflicting conclusions on whether a school can regulate off-campus, online student speech where such speech could foreseeably cause a material disruption to the administration of the school.[50]  The Tenth Circuit has not

---

[47]*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015); *United States v. Alvarez*, 132 S. Ct. 2537 (2012); *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656 (2004).

[48]*Healy v. James*, 408 U.S. 169, 184 (1972).

[49]*See Keefe v. Adams*, 840 F.3d 523 (9th Cir. 2016); *Ward v. Polite*, 667 F.3d 727, 733–34 (6th Cir. 2012); *Keeton v. Anderson-Wiley*, 664 F.3d 865, 875–76 (11th Cir. 2011); *Hosty v. Carter*, 412 F.3d 731, 734–35 (7th Cir. 2005); *Axson-Flynn v. Johnson et al.*, 356 F.3d 1277, 1286–90 (10th Cir. 2004).

[50]*Compare Keefe*, 840 F.3d at 523 (concluding college's removal of student from school based on off-campus statements on his social media page did not violate student's First Amendment free speech rights); *Jackson v. Ladner*, 626 F. App'x 80, 88 (5th Cir. 2015) (concluding that school officials, who punished a high school student for her use of social media to send another student threatening messages while off campus, were entitled to qualified immunity from a claim of a First Amendment violation as such rights were not clearly established); *Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379, 389–96 (5th Cir. 2015) (holding the school may discipline a high school student for off-campus speech on his social media page that was directed intentionally at the school community and understood to be threatening, harassing, and intimidating without violating the student's First Amendment rights); *Wynar v. Douglas Cty. Sch. Dist.*, 728 F.3d 1062, 1070 (9th Cir. 2013) (concluding public school officials did not violate high school student's First Amendment rights by suspending him for sending violent and threatening instant messages from his home to his friends about planning a school shooting); *Yoder v. Univ. of Louisville*, 526 F. App'x 537, 545–47 (6th Cir. 2013) (holding defendant university was entitled to qualified immunity from liability based on alleged First Amendment violation relating to off-campus, social media speech because any such right was not clearly established*)*; *S.J.W. v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 778 (8th Cir. 2012) (holding that high school students allegations that defendants violated their First Amendment rights by suspending them for creating a blog with offensive, racist, and sexist comments about classmates were unlikely to have success on the merits for

11

addressed off-campus, online student speech at the public school or university level. So the Court looks to the weight of authority in other circuits. The Ninth Circuit has addressed online, off-campus speech in the context of colleges and universities. In an analogous case to this one, *Keefe v. Adams*,[51] the Ninth Circuit held that a college could expel a student for off-campus speech on social media without violating his First Amendment rights where the speech was directed at classmates, involved conduct at the school, and violated the Student Code of Conduct. However, this is a 2016 case, and the conduct that is alleged here occurred in 2013 when Plaintiff was suspended. Not only do the majority of circuits hold contrary to Plaintiff's position on regulating off campus, online speech, some of these cases only recently addressed this situation. This precedent could hardly be considered clearly established at the time Defendant expelled Plaintiff.

In addition, both parties rely heavily on Supreme Court cases that govern student speech standards, none of which considers the unique circumstances posed here. Plaintiff has not identified—nor is the Court aware of—a case that undermines a university's ability to take action against a student for making comments off campus that implicate the Student Code of Conduct, the university's sexual harassment policy, and Title IX. Plaintiff has admitted that Title IX required Defendant to take some action in response to the allegations.[52] Defendant has

---

purposes of a preliminary injunction); *Kowalski v. Berkeley Cty. Schs.*, 652 F.3d 565, 570–75 (4th Cir. 2011) (upholding summary judgment in favor of a school that punished a student for creating a MySpace page mocking a fellow student); *Doninger v. Niehoff*, 642 F.3d 334, 347 (2d Cir. 2011) (holding that it is not "clearly established that off-campus speech-related conduct may never be the basis for discipline by school officials"), *with J.S. v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 920 (3d Cir. 2012) (holding that a school district violated the First Amendment rights of plaintiff when it suspended her for creating, outside of school, an online profile for the school principal that mocked the principal and contained adult language and explicit content); *Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 216–19 (3d Cir. 2011) (concluding the school district violated the high school student's First Amendment right of free expression by suspending him for creating a fake Internet profile of school's principal while using his home computer during non-school hours).

[51]*Keefe*, 840 F.3d at 523.

[52]Doc. 15 at 7–8.

obligations under Title IX as announced by the Supreme Court[53] and the United States Department of Education in its "Dear Colleague Letter."[54]  While Plaintiff argues that the Dear Colleague Letter and Title IX do not permit or require suppression of protected speech, Plaintiff was not disciplined based only on offensive speech.  Plaintiff and A.W. were both students at KU.  A.W., based on the incident in Johnson County in June 2013, the threatening statements made by Plaintiff to her, and the tweets in question, was scared to be on campus and leave her sorority house.  According to her findings following the formal hearing, Defendant disciplined Plaintiff for the combined conduct of the tweets, threatening behavior, and June 2013 incident, which was so "severe, persistent, and objectively offensive" that it effectively barred A.W.'s access to education.[55]  Under the circumstances, it cannot be said that Defendant knew or should have known that it was contrary to law or unlawful to expel Plaintiff in this situation.

Further, even assuming that Plaintiff had a First Amendment right to post the tweets, it was not objectively unreasonable for Defendant to believe that the Student Code of Conduct extended her ability to discipline off-campus conduct that affected A.W. on campus.  During the course of the investigation and the formal hearing, A.W. admitted she was scared to be on campus.  There was also testimony that Plaintiff threatened to make sure that A.W. would not be able to attend any university in the state of Kansas.  Article 20 of the Student Code of Conduct provided jurisdiction when "the alleged violation(s) giving rise to the disciplinary action occurs on University premises or at University sponsored or supervised events, or as otherwise required by federal, state or local law."  Although this was off-campus speech, the speech affected A.W.

---

[53] *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 646–47 (1999) (noting a school may be liable for damages where the school is "deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority.").

[54] Dear Colleague Letter from Russlynn Ali, Assistant Secretary for Civil Rights, U.S. Dep't of Educ. Office for Civil Rights (Apr. 4, 2011).

[55] *Davis*, 526 U.S. at 631; Doc. 13-7 at 3.

on campus. It was reasonable for Defendant to believe that Article 20, which gave jurisdiction for discipline as required by federal law (notably, Title IX), allowed her to punish the off-campus conduct that had an effect on A.W. on campus. Even if her belief that she had jurisdiction to discipline was mistaken, qualified immunity allows Defendant to make such a mistake.

Accordingly, any First Amendment right allegedly violated by Defendant was not clearly established such that it would have been clear to Defendant that her actions were unlawful.

### 2. Substantive Due Process

The Court next addresses whether there has been a violation of Plaintiff's substantive due process rights to satisfy the first prong of the qualified immunity inquiry. Further, even assuming there was a substantive due process violation, the Court also addresses whether such a right was clearly established at the time Plaintiff was expelled from KU. The Court determines the substantive due process claim is without merit, and even if such a right existed, it was not clearly established at the time of his dismissal.

Plaintiff argues that he was wrongfully deprived of his property interest in continued enrollment at KU because Defendant's actions in expelling him were arbitrary and lacked in a rational basis. Defendant concedes that Plaintiff had a protected property interest in continued enrollment at KU.[56] However, Defendant instead argues that the issue is whether there was a violation of that right based on the facts alleged in the Complaint. Specifically, Defendant argues that the dismissal was made conscientiously and with careful deliberation, so it can hardly be said to be arbitrary.

---

[56]Plaintiff cited *Harris v. Blake*, 798 F.2d 419 (10th Cir. 1986) and *Gossett v. Board of Regents for Langston University*, 245 F.3d 1172 (10th Cir. 2001) for the proposition that Plaintiff had a property interest in his education. This Court assumes, without deciding, that there is a right to continued enrollment in a public university.

The Supreme Court has "assumed, without deciding, that federal courts can review an academic decision of a public educational institution under a substantive due process standard."[57] Under Supreme Court authority, a plaintiff asserting a substantive due process claim based on academic decision making must show that the decision was the product of arbitrary action rather than a conscientious, careful, and deliberate exercise of professional judgment.[58] In *Ewing*, the Supreme Court announced an extremely deferential standard to educators where the dismissal "rested on academic judgment that is not beyond the pale of reasoned academic decision making."[59] However, in *Ewing*, the Court also cautioned that deference to academic decisions loses its force when the faculty member is "accused of concealing nonacademic or constitutionally impermissible reasons for its actions."[60] Following the Supreme Court's lead, the Tenth Circuit has allowed challenges on due process grounds to student dismissals but upheld rejection of the claims under the deferential standard announced in *Ewing*.[61] The Tenth Circuit has stated "[a]bsent certain factors . . . we will uphold a school's decision to suspend a student in the face of a substantive due process challenge if the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges."[62]

In this case, Plaintiff fails to allege sufficient facts to demonstrate a substantive due process violation because although Plaintiff was removed from KU, there was significant process given to him. The IOA conducted an investigation, and there was a formal hearing. Defendant

---

[57]*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222 (1985); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91–92 (1978).

[58]*Ewing*, 474 U.S. at 224–25; *Gossett*, 245 F.3d at 1182.

[59]*Ewing*, 474 U.S. at 227–28.

[60] *Id.* at 225.

[61]*See Salehpoor v. Shahinpoor*, 358 F.3d 782, 786–87 (10th Cir. 2004); *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200–01 (10th Cir. 2003).

[62]*Butler*, 341 F.3d at 1200–01;*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998); *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1215 (10th Cir. 1998).

made the decision to expel Plaintiff after a formal hearing. Plaintiff was allowed to appeal, and ultimately, he was reinstated at KU. Defendant's decision to remove Plaintiff was based on "academic judgment that is not beyond the pale of reasoned academic decision-making."[63] The decision to expel him could undoubtedly be considered conscientious, careful, and deliberate. The allegations in the complaint that his expulsion from KU were "arbitrary and lacking in a rational basis" do not meet the deferential standard announced in Supreme Court precedent.

The Court further finds it is not "shocking to the conscience" that Plaintiff was expelled based on Defendant's findings following the investigation at KU. After issuing the No Contact Letter, Plaintiff was warned by the IOA to cease his indirect communication to A.W. via Twitter on September 6, 2013. He did not comply and continued to tweet indirectly about A.W. Defendant expelled Plaintiff based on the June 2013 incident, threatening statements, the tweets, and his failure to comply with the No Contact Letter. Defendant found these to be in violation of the Student Code of Conduct and sexual harassment policy. Under the deferential standards applied to university faculty in disciplinary settings, the Court is unwilling to second guess Defendant's professional judgment as this hardly reaches the level of "shocking the conscience" of a federal judge. Therefore, even viewed in the light most favorable to Plaintiff, there is no claim for a violation of Plaintiff's substantive due process rights.

However, even assuming Plaintiff could show a constitutional violation, the Court believes that the law is not so clearly established that Defendant knew or should have known that expulsion for this conduct would violate Plaintiff's substantive due process rights under these circumstances. Plaintiff is required to point to a Supreme Court case, Tenth Circuit precedent, or the clearly established weight of authority from other courts that have found the law to be as the

---

[63] *Ewing*, 474 U.S. at 227–28.

plaintiff maintains.[64]  Plaintiff has not pointed to a case that such a dismissal and the amount of process given here reached the level of being "beyond the pale of reasoned academic decision making."  Plaintiff cites to *Harris v. Blake*[65] and *Gossett v. Board of Regents for Langston University*,[66] but these cases do not support his position.  *Harris* ultimately did not find the decision to dismiss the student was arbitrary,[67] and *Gossett* found the decision to dismiss the student may have been arbitrary given there was facts in the record that suggested gender discrimination.[68]  Both cases involved the process given to students when receiving a letter grade, but ultimately required a showing that the decision was made based on "nonacademic or unconstitutional motives."[69]  Here, the Complaint alleges that the IOA, a formal hearing committee, Defendant, and the University Judicial Board all reviewed the sexual harassment allegations against Defendant.  There is nothing to suggest that his expulsion was based on "nonacademic or unconstitutional motives" as *Harris* and *Gossett* require.  Because the law does not clearly establish that Defendant could not expel Plaintiff for threatening statements, criminal restraint, and the tweets as Plaintiff would maintain, Defendant is entitled to qualified immunity.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 13) is **granted**.

---

[64]*Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)).

[65]798 F.2d 419 (10th Cir. 1986).

[66]245 F.3d 1172 (10th Cir. 2001).

[67]*Harris*, 798 F.2d at 424–25.

[68]*Gossett*, 245 F.3d at 1182.

[69]*Id.*; *Harris*, 798 F.2d at 424.

**IT IS SO ORDERED.**

Dated: December 1, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
